**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00715-RGJ-CHL**

**MONICA S.,[1]**                                                                                                        **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                                                          **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Monica S. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary. (DNs 11, 12.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 9.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.      BACKGROUND**

On or about August 16, 2019, Claimant protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on May 26, 2018. (R. at 14, 52, 54, 69, 71, 86, 88, 103, 105, 186-87, 203-17.) On February 1, 2021, Administrative Law Judge ("ALJ") Susan Brock ("the ALJ") conducted a hearing on Claimant's application. (*Id.* at 33-51.) In a decision dated June 30, 2021, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 11-32.) In doing so, the ALJ made the following findings:

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020. (*Id.* at 17.)

2. The claimant has not engaged in substantial gainful activity May 26, 2018, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: osteoarthritis; complex regional pain syndrome ("CRPS"); migraine; depressive disorder; anxiety; and posttraumatic stress disorder ("PTSD"). (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can perform simple, routine tasks requiring little independent judgment and minimal variation. She can have occasional interaction with coworkers and supervisors but should avoid interacting with the general-public. She can tolerate occasional workplaces changes that were gradually introduced. (*Id.* at 19.)

6. The claimant is unable to perform any past relevant work. (*Id.* at 25.)

7. The claimant . . . was 19 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (*Id.*)

8. The claimant has at least a high school education. (*Id.* at 26.)

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. (*Id.*)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 26, 2018, through the date of this decision. (*Id.* at 27.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on October 5, 2021. (*Id.* at 1-6, 182-85.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2022); *see also* 42

U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on November 30, 2021. (DN 1.)

## II.  DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2022).

### A.  Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the

Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2022). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2022).

performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Claimant's Contentions

Claimant argued that the ALJ erred in several ways. Claimant argued that the ALJ erred in her analysis of the paragraph B criteria of Listings 12.04, 12.06, and 12.15. (DN 11, at PageID # 689-91.) Claimant also argued that the ALJ erred in her assessment of Claimant's RFC in multiple ways including in her conclusion that Claimant could perform light work despite her complex regional pain syndrome ("CRPS"), in failing to address the combination of Claimant's impairments, and in her conclusion that Claimant could have occasional interaction with supervisors and coworkers. (*Id.* at 691-93.) Claimant argued that these errors caused an additional error at step five because the ALJ's hypothetical to the vocational examiner ("VE") did not accurately portray her limitations. (*Id.* at 693-94.) The Court will address these arguments below.

#### 1. Listings

Claimant argued that the ALJ erred at step three in her paragraph B analysis by failing to find that Claimant had at least a marked limitation in her ability to interact with others and to adapt and manage herself. (DN 11, at PageID # 689-91.) Claimant argued that in doing so, the ALJ failed to follow the dictates of SSR 16-3p and the general provisions of the 12.00 Listings. (*Id.*) Further, she claimed that the ALJ did not offer a sufficient explanation to facilitate meaningful review in violation of *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 424 (6th Cir. 2011). (*Id.*)

At step three of the five-step evaluation process, the ALJ considers whether the claimant has an impairment that satisfies the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix

1, which are generally referred to as the "Listings." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "[A] claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Comm'r Soc. Sec. Admin.,* 582 F.3d 647, 653 (6th Cir. 2009). A claimant's impairment satisfies a Listing only when the claimant manifests the specific requirements described in the Listing's medical criteria. 20 C.F.R. §§ 404.1525(d), 416.925(d) (2022).[3] To meet the requirements of a listed impairment or its equivalent, a claimant must demonstrate specific findings that duplicate the enumerated criteria of the listed impairment. *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006); *see also Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency."). The claimant bears the burden of proving his or her impairment satisfies all the specified criteria in a given Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ found at step three that Claimant did not meet the criteria of any of the Listings and specifically considered whether the Claimant met the requirements of Listings 12.04, 12.06, and 12.15. (R. at 17-19.) In doing so, the ALJ only considered whether Claimant had the required level of limitation in the paragraph B criteria. (*Id.* at 18-19.) To meet the requirements of Listings 12.04, 12.06, and 12.15, a claimant must satisfy the requirements of either both paragraphs A and B or A and C of the particular listing. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00A(2) (eff. Apr. 2, 2021) (Westlaw). Neither Claimant nor the ALJ addressed whether Claimant met the required

---

[3] The Commissioner noted in her brief that she would cite to the 2021 versions of the regulations because those were the versions in effect at the time the ALJ issued her decision. (DN 12, at PageID # 699 n.1.) The Court will cite to the most currently available version of the applicable regulations where there have been no substantive, outcome-determinative changes since the date of the ALJ's decision.

paragraph A criteria of the challenged Listings. As this is a requirement in order for Claimant to be found disabled, Claimant's Listing argument is facially deficient. This deficiency notwithstanding, the Court also finds that the ALJ did not err in her evaluation of the paragraph B criteria for the reasons set forth below.

The four paragraph B criteria are a claimant's ability to "[u]nderstand, remember, or apply information"; "[i]nteract with others"; "[c]oncentrate, persist, or maintain pace"; and "[a]dapt or manage oneself." *Id.* at § 12.00E. In order to meet Listings 12.04, 12.06, and 12.15, a claimant must have either an extreme limitation in one of the above areas or a marked limitation of two of the above areas. *Id.* at § 12.00F(2). An extreme limitation is defined as "not [being] able to function in [an] area independently, appropriately, effectively, and on a sustained basis." *Id.* at § 12.00F(2)(e). A marked limitation is defined as a claimant whose "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* at § 12.00F(2)(d). Here, the ALJ found that Claimant had only a moderate limitation—defined as a claimant whose "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is fair," *id.* at § 12.00F(2)(c)—in the two paragraph B criteria challenged by Claimant: her ability to interact with others and her ability to adapt or manage herself. (R. at 18-19.)

As to Claimant's ability to interact with others, the ALJ noted that Claimant was pleasant with her treatment providers, lived with her mother, interacted with her grandmother, spent some time with a friend, sometimes went out to eat with her friend, once lived with her boyfriend, saw her siblings often, accessed social media, and "had some friends that she talked to 'regularly.' " (*Id.* at 18.) The ALJ also noted Claimant's contrary testimony that "being around others can trigger a panic attack and that she avoid[ed] going public places such as a store." (*Id.*) At the outset of

7

her Listing analysis, the ALJ had also noted that the state agency consultants had found that Claimant did not meet the requirements of the Listings. (*Id.* at 17.) The state agency consultants found that Claimant had only a moderate limitation in her ability to interact with others. (*Id.* at 61, 78, 95, 112.) As to Claimant's ability to adapt or manage herself, the ALJ noted that Claimant lived with her mother, did household chores, denied problems with her personal grooming, played video games, did some yoga, and spent time with her friend. (*Id.* at 19.) The ALJ also pointed out that Claimant participated during the hearing before the ALJ where the Claimant was unrepresented. (*Id.*) The ALJ cited the results of a consultative examination performed of the Claimant where Claimant had no deficits in immediate, recent, or remote memory; was friendly with the examiner; reported she lived with her then boyfriend; reported she saw her siblings often; reported accessing Facebook; had some friends she spoke with regularly; reported cooking, microwaving, and using the phone; and said she played video games and watched television. (*Id.*) And again, at the outset of her Listing analysis, the ALJ had noted in support that the state agency consultants found Claimant did not meet the Listings. (*Id.* at 17.) The state agency consultants found that Claimant had only a mild limitation in her ability to adapt or manage herself. (*Id.* at 61, 78, 95, 112.)

Claimant argued that this analysis did not comport with the introductory sections of the 12.00 Listings addressing how an ALJ should consider the relevant paragraph B criteria.[4] (DN 11,

---

[4] Claimant also argued that the ALJ's analysis failed to comport with SSR 16-3p. (DN 11, at PageID # 689.) SSR 16-3p provides guidance about how an ALJ will interpret a claimant's statements regarding his or her subjective symptoms. SSR 16-3p, 81 Fed. Reg. 14166, 14166-72 (Mar. 16, 2016). Despite her reference to the SSR and claim that the ALJ "failed to follow [its] directives," Claimant failed to specify how this SSR was violated and instead focused on her arguments that the ALJ did not comport with the other provisions of the Listings. Given Claimant's failure to clearly specify how SSR 16-3p was violated in the ALJ's Listing analysis, the Court will not make her argument for her. *See United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006).

at PageID # 689.) Listing 12.00C addresses what evidence an ALJ should use to evaluate a claimant's mental disorder. In Section 12.00C(6), the Listing provides that an ALJ should consider evidence of a claimant's functioning in both unfamiliar and supportive situations, the latter of which the Listing notes "does not necessarily demonstrate [a claimant's] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00C(6)(a)-(b). Claimant also pointed to Listing 12.00D, which governs how an ALJ should consider "psychosocial supports, structured settings, living arrangements, and treatment." *Id.* at § 12.00D. The particular provision cited by Claimant notes that an ALJ will consider the "kind and extent of supports" a claimant receives in evaluating a Claimant's functioning. *Id.* at § 12.00D(1). Claimant argued that her interactions with her family and friends are not indicative of how she could interact with strangers and pointed to her own testimony regarding having been fired from jobs due to her panic attacks and that her panic attacks are triggered by loud noises and being around others in support of her claim that the ALJ should have found her to have at least a marked limitation in her ability to interact with others. (DN 11, at PageID # 689-90.) She made the same arguments regarding her ability to adapt or manage herself. (*Id.*) The Court finds that the ALJ's analysis was supported by substantial evidence and that Claimant has done no more than point to other evidence in the record that could have supported an opposite conclusion. The fact that the ALJ did not specifically cite the Listing provisions cited by Claimant does not mean that those issues were not considered. The ALJ noted where Claimants interactions were with family and friends versus with her treatment providers, itself a recognition of the different weight to be attributed to those situations. The ALJ also cited in support to the conclusion reached by the state agency consultants, a conclusion which Claimant did not challenge in her analysis. While Claimant may have preferred a different result, the Court cannot say that

the ALJ's conclusion is unsupported by substantial evidence or out of compliance with the applicable Listing guidance.

Claimant also argued that the ALJ's discussion of the relevant paragraph B criteria was insufficient under *Reynolds*. The regulations do not specify how much discussion an ALJ must provide regarding those Listings as to which a substantial question is raised. However, the Sixth Circuit has held that in evaluating whether a claimant has met a particular Listing, an ALJ must "actually evaluate the evidence, compare it to . . . the [relevant] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds*, 424 F. App'x at 416. This is not a heightened articulation standard because as the Sixth Circuit has also acknowledged the applicable regulations only require the ALJ to *consider* whether the Listings are applicable; they do not require the ALJ to provide "good reasons" as in the context of the former treating physician rule. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(3), (a)(4)(iii) and *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), *as amended*); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). Nor do the applicable regulations regarding the Listings require an ALJ to explain how he or she considered particular factors as they do in the context of the new rules applicable to opinion evidence. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2022) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."). Here, the ALJ's discussion more than comported with *Reynolds*. The ALJ noted what on what evidence she relied to reach her conclusion and included citations to the record. While the Claimant may disagree with the ALJ's conclusion, the ALJ provided a sufficient evaluation to enable meaningful judicial review.

Having found the ALJ's paragraph B analysis supported by substantial evidence and compliant with applicable procedural authority, the Court rejects Claimant's argument that there was any error in the ALJ's step three analysis.

### 2. RFC

Claimant also argued that the ALJ's determination of her RFC was incorrect in several respects including in the ALJ's evaluation of her CRPS, failure to consider the combination of her impairments, and incorrect evaluation of her ability to interact with supervisors and coworkers. (DN 11, at PageID # 691-93.) An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c) (2022). The ALJ bases his or her determination on all relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1)-(4), 416.945(a)(1)-(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 416.920c; 20 C.F.R. §§ 404.1529, 416.929 (2022). The Court will consider Claimant's individual arguments below.

#### a) CRPS

Claimant argued that the ALJ erred in concluding she could perform the demands of light work because her CRPS precluded it and argued that the ALJ did not provide a sufficient narrative discussion to support her conclusion. (DN 11, at PageID # 691-92.) Claimant criticized the ALJ for relying on "absent findings with regard to [ ] pain" to support her RFC determination because Claimant argued that was diagnostic of CRPS. (*Id.* at 692.) Claimant also challenged the ALJ's treatment of her daily activities. (*Id.*)

11

SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. 34474, 34478 (July 2, 1996). It requires an ALJ's RFC finding to address in a function-by-function evaluation both the exertional and nonexertional capabilities of an individual. *Id.* at 34476-77. Exertional limitations relate to an individual's ability to sit, stand, walk, lift, carry, push, and pull. *Id.* at 34477. Nonexertional limitations relate to an individual's potential postural, manipulative, visual, communicative, and mental limitations and ability to tolerate various environmental factors. *Id.* However, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (per curiam); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

At step two, the ALJ found that Claimant's CRPS was a severe impairment that significantly limited Claimant's ability to perform basic work activities. (R. at 17.) In her RFC determination, the ALJ found Claimant could perform light work but with certain nonexertional limitations. (*Id.* at 19.) As the ALJ did not include any exertional limitations in her RFC determination, this meant the ALJ concluded that Claimant could perform the definitional requirements of light work: lifting no more than twenty pounds at a time, frequently lifting and carrying objects weighing up to ten pounds, a good deal of standing or walking, and/or sitting most of the time with the ability to do some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b) (2022). SSR 83-10 elaborates on the regulation's definition of the standing and walking requirements for light work and provides, "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6

(Jan. 1, 1983.)  In support of her RFC determination, the ALJ noted Claimant's testimony that she believes she is physically able to drive, cannot walk or stand for more than twenty minutes, and cannot sit for more than thirty minutes without left leg swelling and back pain.  (R. at 20.)  However, the ALJ concluded that Claimant's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 21.)  The ALJ cited to Claimant's visits with her treating neurologist, her chiropractic records, and unrelated inpatient treatment records that reflected Claimant was in no apparent distress.  (*Id.* at 21 (citing *id.* at 361-73, 380-72, 484, 487, 491, 503-09, 561-73, 614-47).)  The ALJ noted that in these records Claimant had unremarkable gait, reported doing well with PT, had intact sensation, had unremarkable musculoskeletal and bilateral extremities findings, showed neurological findings within normal limits, and reported that Gabapentin improved her symptoms.  (*Id.*)  The ALJ concluded that while Claimant's CRPS was a severe impairment, Claimant had "overall rather conservative care" for the condition, had overall maintained the condition with prescribed medication, had not recently been to the emergency room for acute pain symptoms or hospitalized overnight for her CRPS, and, pivotally, that it did not "appear that a treatment provider ha[d] given the [C]laimant any limitations or restrictions in her activities due" to her CRPS.  (*Id.* at 21-22.)  The ALJ also cited in support to the opinions of the state agency consultants, who found Claimant could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday, and had an unlimited ability to push, pull, and use hand or foot controls.  (*Id.* at 24, 63, 80, 97-98, 114-15.)  These findings are the equivalent of the ability to perform light work.  The ALJ found these opinions generally persuasive and consistent with the medical evidence demonstrating Claimant's overall conservative care for her physical

impairments. (*Id.* at 24-25.) Claimant cited no rule preventing the ALJ from considering any of this information in making a determination of her RFC and cited to no evidence disputing the ALJ's conclusion regarding the lack of functional limitations imposed by Claimant's treatment providers. This absence is particularly significant in this case because the mere existence of symptoms or a diagnosis does not establish functional limitations. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)) ("But not every diagnosable impairment is necessarily disabling."); *Kennedy v. Astrue*, 247 F. App'x 761, 767 (6th Cir. 2007) ("[A] mere diagnosis of obesity does not establish either the condition's severity or its effect on [claimant]'s functional limitations."). Under these circumstances, the Court concludes that the ALJ supported her evaluation of Claimant's RFC and CRPS with substantial evidence.

      To the extent that Claimant argued the ALJ erred in evaluating her daily activities, the Court also finds this argument to be without merit. Though the regulations omit the term "credibility," they provide that when forming an RFC, an ALJ must assess the claimant's subjective allegations regarding his or her symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a). The regulations note that a claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she is disabled; there must be objective medical evidence that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. *Id.* If the ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ should consider a number of factors including a claimant's daily activities; the

location, duration, frequency, and intensity of a claimant's pain or other symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of claimant's medications; and any other measures a claimant may use to alleviate pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929). Claimant argued that her daily activities did not indicate that "she has the ability to function independently, appropriately and effectively on a sustained basis—the ability to sustain an 8-hour a day, 5-day a week job." (DN 11, at PageID # 692.) But the ALJ did not equate Claimant's daily activities with her ability to performed sustained work. The ALJ instead recounted Claimant's testimony regarding her daily impairments and her abilities as a contrast to the medical evidence and used this contrast in formulating Claimant's RFC. The Court finds no error in the ALJ's use of the Claimant's activities for this purpose; instead doing so is directly consistent with the applicable regulations.

The Court finds Claimant has failed to demonstrate any error in the ALJ's treatment of her CRPS and conclusion that Claimant could perform light work.

### b) Combination of Impairments

Claimant argued that the ALJ did not consider whether the combination of her impairments rendered her disabled and in particular did not consider the combination of her CRPS and anxiety. (DN 11, at PageID # 692-93.) Discussing multiple impairments individually does not mean the ALJ failed to consider the combined effect of those impairments where the ALJ specifically referred to a "combination of impairments" in finding that the claimant did not meet the Listings. *Gooch v. Sec'y of Health & Hum. Servs.*, 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988); *Loy v. Sec'y of Health & Hum. Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). Here, in her step three finding regarding the Listings, the ALJ specifically noted that Claimant did "not

have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 17.) This statement evidences that the ALJ properly considered Claimant's impairments in combination though he may have discussed them individually in his decision. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020).[5] And given the ALJ's thorough discussion of Claimant's individual impairments, the Court finds that Claimant's argument is without merit.

### c) Ability to Interact with Supervisors and Coworkers

Claimant argued that the ALJ's conclusion in her RFC determination that Claimant could have occasional interaction with supervisors and coworkers was unsupported by substantial evidence. (DN 11, at PageID # 693.) Claimant cited in support to the opinion of consultative examiner ("CE") Ruth K. Bewley, Ph.D. ("Dr. Bewley") and noted that the ALJ had found Dr. Bewley's opinion generally persuasive. (*Id*.) Claimant also cited her own testimony about having panic attacks while employed that caused her to be fired. (*Id.*)

Claimant argued that Dr. Bewley concluded "there was no evidence to support that she had any capacity to respond to supervisors or coworkers" and that Dr. Bewley opined she would need "a program of 'de-escalation of anxiety on job sites.' " (DN 11, at PageID # 693.) The Commissioner contended that Claimant misstated Dr. Bewley's opinion. (DN 12, at PageID # 703 n.3.) Having reviewed Dr. Bewley's opinion, the Court agrees with the Commissioner. Dr. Bewley examined Claimant via telehealth on June 3, 2020. (R. at 515.) Dr. Bewley found that Claimant's "ability to communicate and socialize with peers and adults appeared to be affected by

---

[5] Claimant cited to *Blankenship v. Bowen*, 874 F.2d 1116, 1123-24 (6th Cir. 1989), in support of her argument in which the Sixth Circuit noted in reversing the Commissioner's final decision that "[d]espite the ALJ's statement that the combined effects of appellant's nonexertional exertional impairments were considered, there was, in reality, no combined treatment in the ALJ's subjective symptom analysis or elsewhere." The Court finds Claimant's citation to *Blankenship* non-dispositive of the instant issue given the other published cases cited above.

[her] impairments to a moderate degree." (*Id.* at 519-20.) Dr. Bewley also noted that Claimant's "capacity to respond appropriately to supervisors and coworkers in a work setting [wa]s largely untested," noting that Claimant "ha[d] panic attacks shortly after becoming employed anywhere." (*Id.* at 520.) As to Claimant's prognosis, Dr. Bewley wrote, "Fair, would benefit from a weight reduction program and counseling for depression, PTSD, and deescalation [*sic*] of anxiety on job sites." (*Id.* at 519.) Dr. Bewley essentially did not make a conclusion about Claimant's ability to interact with coworkers and supervisors, which the Court views as distinct from saying no evidence supports that Claimant can interact with them. And as to the issue of a program of de-escalation, Dr. Bewley did not opine that Claimant would need one to work, she noted that Claimant would benefit from counseling regarding de-escalation of anxiety on job sites. Thus, the Court concludes that Dr. Bewley's opinion does not support a need for greater limitations than those imposed by the ALJ on Claimant's ability to interact with coworkers and supervisors. The ALJ concluded that Claimant could have "occasional interaction with coworkers and supervisors but should avoid interacting with the general-public." (*Id.* at 19.) In support, the ALJ summarized Claimant's mental health treatment records and cited to the opinions of the state agency psychological consultants, which she found partially persuasive. (*Id.* at 22-25.) Notably, the ALJ did not conclude that Claimant's ability to interact with supervisors and coworkers was unlimited and instead found that Claimant could *occasionally* interact with those individuals. (*Id.* at 19.) Given how heavily Claimant's argument relied on Dr. Bewley's opinion as compared to the other evidence relied on by the ALJ to support her conclusion, the Court finds that the ALJ's remaining discussion was supported by substantial evidence.

### d) RFC Generally

Based on the conclusions above, the undersigned finds that the ALJ's RFC determination was supported by substantial evidence. Her analysis more than surpasses the threshold for substantial evidence, which is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). Claimant did nothing more than point to other evidence in the record she claimed supported an opposite conclusion to that reached by the ALJ. However, this Court's role is not to second-guess the ALJ's conclusions. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108.

### 3. Step Five

Claimant also argued that the ALJ's step five findings were in error because the hypothetical questions the ALJ posed to the VE did not accurately portray Claimant's impairments. (DN 11, at PageID # 693-94.) At step five, the ALJ has the burden of demonstrating that there exists a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. §§ 404.1560(c) 416.960(c) (2022); *Jordan*, 548 F.3d at 423. The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations. *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). But a VE's testimony can constitute substantial evidence to support

the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the economy, *Bradford v. Sec'y Dep't. of Health & Hum. Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), only so long as the VE's testimony is based on a hypothetical question that "accurately portrays [a claimant's] individual physical and mental impairments." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). *See also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). "However, the ALJ is only required to incorporate into the hypothetical questions those limitations which have been accepted as credible." *Hare v. Comm'r of Soc. Sec.*, 37 F. App'x 773, 776 (6th Cir. 2002); *see also Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.")). The undersigned has already found above the that ALJ's determination of Claimant's RFC was supported by substantial evidence. Thus, the ALJ was not required to include additional limitations related to these capacities in her hypothetical to the VE, and the VE's testimony constitutes substantial evidence to support her step five determination.

Accordingly, the undersigned finds that Claimant has failed to demonstrate any reversible error in the ALJ's step five analysis.

### III.  CONCLUSION AND ORDER

For the foregoing reasons, the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:    Counsel of Record
       March 24, 2023